Tabor v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-04-301-CR 

       2-04-302-CR 

       2-04-303-CR

JAMES TABOR APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Based on two separate indictments, a jury convicted James Tabor of aggravated sexual assault of a child under fourteen years of age, indecency with a child by contact, and aggravated kidnapping.  The jury assessed his punishment at life in prison for the sexual assault offense, twenty years’ imprisonment for the offense of indecency with a child by contact, and fifty years’ imprisonment for aggravated kidnapping.  In five points, Tabor appeals his conviction.  We affirm.

II. Background Facts

At 7:00 a.m. on April 8, 2002, thirteen-year-old K.S. was walking from her mobile home to the school bus stop when she was approached by a man. The man put his arm on her shoulder, turned her around, and told her that he would cut her throat if she tried to get away from him. 

The man then led K.S. to a vacant mobile home.  After entering the mobile home, the man forced K.S. to perform oral sex on him.  The man also touched her vaginal area and spanked her buttocks.  After the assault, the man gave K.S. a white cloth so she could clean her mouth.  The man then showed K.S. two baseball bats and threatened to kill her if she told anyone.  A few minutes later the man left.

Shortly after the man left, K.S. went home and reported the attack to her mother.  K.S.’s mother called the police and reported the incident.  K.S. described her attacker as a white male in his forties.  After reporting the attack, K.S. was taken to Cook Children’s Hospital for an examination.  Swabs were taken from K.S.’s mouth, breasts, and thighs.  Those swabs were given to the Fort Worth Police Department Crime Lab (the “Crime Lab”) and then to the Tarrant County Medical Examiner’s Office.  

The mobile home where the assault took place was owned by a man named Louis Seiler.  Upon being notified of the attack, Seiler told the police that the mobile home was for rent and that he had shown it to a white man in his late thirties or early forties the day before the attack.  Seiler cooperated with the investigation and gave the police Tabor’s phone number.  The police then contacted Tabor and questioned him about the events.  Tabor admitted that he was at the scene of the crime around the same time the offense occurred.  He claimed that he was there to obtain a key to the trailer from Seiler.  

Because Tabor was considered a suspect, a buccal swab was taken from him to compare his DNA to that found during K.S.’s examination.  Carolyn Van Winkle, the DNA analyst, examined the results and found that the only two DNA profiles present in K.S.’s swabs were K.S.’s and Tabor’s.  Tabor was then charged with aggravated sexual assault of a child under fourteen years of age, indecency with a child by contact, and aggravated kidnapping. 

In addition to the DNA evidence against Tabor, Tabor’s ex-girlfriend testified that while Tabor was awaiting trial he admitted committing the offenses against K.S.  When Tabor’s ex-girlfriend asked Tabor why he did it, she stated that he replied, “because she was there.”  A jury found Tabor guilty of each charge.  This appeal followed. 

III. 
Motion to Quash The Indictment 

In Tabor’s first and second issues, he contends that the trial court erred by denying his motion to quash the indictment for aggravated kidnapping. 

In Tabor’s first issue, he argues that the trial court erred in denying his motion to quash the indictment because it failed to allege the essential element of “restriction of movement so as to substantially interfere with liberty.”  The essential elements of aggravated kidnapping, as relevant to the instant case, are that a person: (1) intentionally or knowingly, (2) abducts, (3) another person, (4) with the intent to violate or abuse the person sexually.  
Phillips v. State
, 597 S.W.2d 929, 932 (Tex. Crim. App. [Panel Op.] 1980).  

“Restriction of movement so as to substantially interfere with liberty” is not an essential element of the offense of aggravated kidnapping.  
See
 
Tex. Penal Code Ann
. § 20.04(a) (Vernon 2003).  That particular phrase is found in the penal code under the definition of “restrain.”  
See
 
id
. 
§ 20.01(1) (Vernon Supp. 2005).  Definitions of terms and elements are essentially evidentiary and need not be alleged in the indictment.  
Lewis v. State
, 659 S.W.2d 429, 431 (Tex. Crim. App. 1983).  However, if a definition provides for more than one manner or means to commit an act or omission, then, upon timely request, the State must allege the particular manner or means on which it relies.  
Ferguson v. State
, 622 S.W.2d 846, 851 (Tex. Crim. App. [Panel Op.] 1980).

Here, the indictment alleged that Tabor abducted K.S. by restraining her. Because “restrain” comprises more than one statutorily defined means of its performance, either by moving the person from one place to another or by confining the person, the indictment must have specified which of the statutory definitions of the act it relied upon.  
See Coleman v. State, 
643 S.W.2d 124, 126 (Tex. Crim. App. 1983).  In both counts, the indictment alleged that Tabor restrained K.S. by “moving K.S. from one place to another.”  Therefore, because the State alleged all of the essential elements of the offense of aggravated kidnapping and also alleged the particular manner or means of restraint on which it relied, no additional pleading was necessary.  Accordingly, we overrule Tabor’s first issue.

In Tabor’s second issue, he contends that the trial court erred by denying his motion to quash and set-aside the indictment because the indictment failed to allege the statutorily delineated manner of “without consent.”  However in 
Ward v. State
, the Court of Criminal Appeals held that the phrase “without consent” is surplusage to the term “restrain” and thus, not required to be pleaded in an indictment.  
See Ward v. State
, 642 S.W.2d 782, 783 (Tex. Crim. App. 1983).  The court held further that unlike the element of restraint, there are no statutorily alternative manners or means for “without consent.”  
Curry v. State
, 30 S.W.3d 394, 402 (Tex. Crim. App. 2000).  Restraint is not restraint unless it is without consent and 
it is a given under the statute that all restraint is without consent.  
Id
.  Consequently, we hold that the State was not required to allege the manner of “without consent” because the indictment included the term “restrain.”  Accordingly, we overrule Tabor’s second issue.

IV. Punishment Enhancement 

In his third issue, Tabor argues that the verdict of guilt is void because all of the factors used to increase his punishment were not pleaded and proven beyond a reasonable doubt.  He appears to argue that because the indictment failed to allege the essential elements of “substantially interfere with liberty” and the manner and means of “without consent,” his constitutional rights were violated.  As we held in our discussion of the first two issues, to “substantially interfere with liberty” is not an essential element of the offense of aggravated kidnapping, and the State was not required to allege the manner of “without consent” in the indictment.  Additionally, as the State points out, Tabor has failed to demonstrate how his punishment was increased beyond the prescribed statutory maximum.  Therefore, Tabor has not demonstrated that his constitutional rights were violated.  We overrule Tabor’s third issue.  

V. 
Admission of Evidence

In his fourth issue, Tabor argues that the trial court abused its discretion by refusing to admit certain relevant evidence.  In his fifth issue, he contends  that the trial court erred by admitting other evidence because its probative value was substantially outweighed by the danger of unfair prejudice. 

A. Standard of Review

We review the trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  
Montgomery v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1991).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse
.  
Montgomery
, 810 S.W.2d at 391.  We will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement.  
Id
. 

B. Admission of Evidence

The Texas Rules of Evidence provides that evidence must be relevant to be admissible.  
Tex. R. Evid
. 402.  Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  
Tex. R. Evid
. 401.  In determining whether evidence is relevant, courts look to the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).  Further, even if the evidence is relevant, Rule 403 mandates its exclusion “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.”  
Tex. R. Evid
. 403; 
see also
 
Jones v. State
, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 832 (1997).

1. Impeachment Evidence

In his fourth issue, Tabor contends that the trial court erred in denying the admission of proper and probative impeachment evidence concerning the mishandling of DNA evidence by the Crime Lab in previous cases.  The State responds that the trial court did not err because Tabor stipulated to the chain of custody making the evidence of the Crime Lab’s handling of DNA samples in previous cases, irrelevant. 

A stipulation is a voluntary agreement between opposing parties concerning some relevant point.  
Black's Law Dictionary 1445 
(8th ed. 2004).  As a general proposition, a stipulation is regarded as a contractual agreement between the parties.  
Howeth v. State
, 645 S.W.2d 787, 789 (Tex. Crim. App. 1983).  Further, stipulations are reasonably and liberally construed with a view of effectuating the parties' intentions.  
See O’Conner v. State,
 401 S.W.2d 237, 238 (Tex. Crim. App. 1966).  
Here, it was the intent of Tabor and the State to stipulate to the chain of custody of the DNA evidence without the necessity of proof before the jury.  The stipulation includes statements that the examination kit was placed in a sealed envelope by the doctor who conducted the exam of K.S. at Cook Children’s Hospital, that a Fort Worth police officer picked up the sealed envelope from the hospital and delivered it to the Crime Lab, that an employee of the Crime Lab checked the sealed envelope out of the Crime Lab and delivered it to Carolyn Van Winkle at the Tarrant County Medical Examiner’s office, and that Van Winkle opened the sealed envelope for testing purposes.  The stipulation conclusively establishes that the envelope remained sealed from the time it left the hospital until it was opened by Van Winkle at the Tarrant County Medical Examiner’s office.  
See
 Tex. R. Evid
. 402.  There is no evidence that the envelope was mishandled or tampered with while it was in storage at the Crime Lab.  The evidence shows that the Crime Lab’s only role was to provide storage for the kit.  

Therefore, although the testimony may have been relevant to establishing that there were problems with the Crime Lab’s handling of evidence in other cases, here, because Tabor stipulated to a specific description of the chain of custody that did not contain any problem at the Crime Lab involving this piece of evidence, the trial court reasonably could have concluded that the evidence was irrelevant to this case.  Further, the trial court reasonably could have concluded that the evidence was inadmissible under Rule 403 because the probative value of the evidence was substantially outweighed by the danger that it would mislead the jury or confuse the issues.  
See
 
Tex. R. Evid
. 403; 
Montgomery
, 810 S.W.2d at 391-93 (holding that an appellate court should afford deference to a trial court’s Rule 403 balancing determination, reversing only where the ruling lies outside the zone of reasonable disagreement). Accordingly, we hold that the trial court did not abuse its discretion by excluding the proffered testimony.  We overrule Tabor’s fourth issue.

2. Extrajudicial Confession

In Tabor’s fifth issue, he argues that the trial court erred by overruling his objection to testimony regarding statements he allegedly made to his ex-girlfriend, Cathie Boydstun, in which he admitted to committing the charged offense.
(footnote: 2)  He asserts that the trial court’s admission of this evidence over his objection violated Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice.  We disagree. 

Tabor’s alleged confession to Boydstun was relevant because it linked Tabor to the kidnapping and sexual assault of a thirteen-year-old girl, making it more likely that he committed the offense against K.S.  
See
 Tex. R. Evid. 601
. Thus, the trial court properly concluded that the evidence had probative value. Further, although Tabor states that the “highly prejudicial nature of the testimony is obvious,” he does not identify any unfair prejudice arising from the evidence.
(footnote: 3)  Instead, he merely argues that the evidence has little probative value because Boydstun was not a credible witness.  He does not cite any cases that support his argument.
(footnote: 4)  Moreover, the credibility of the evidence is for the fact finder to determine.  
See
 
Tex. Code Crim. Proc. Ann. 
art 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Therefore, we hold that the trial court did not abuse its discretion by admitting Boydstun’s testimony and we overrule Tabor’s fifth issue.

VI. Conclusion

Having overruled all five of Tabor’s issues, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  December 1, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.

2:
Boydstun testified that, during a jailhouse conversation with Tabor, she asked him “why he did what he did,” and he responded that he did it because “she was there.”  

3:
In his brief, Tabor does not specifically explain how the statement is prejudicial.  He only states that the “highly prejudicial nature of [the] testimony is obvious.” 

4:
Tabor cites three cases in which he claims that the respective courts held that “due to the lack of credibility of the inflammatory statements and all the circumstances involved, the probative value of the testimony was greatly reduced and substantially outweighed by the highly prejudicial and inflammatory nature of the testimony.”  In two of the cases, the courts held that the prejudicial effect of photographic evidence substantially outweighed its probative value under Rule 403.  
See Salazar v. State
, 90 S.W.3d 330, 336-38 (Tex. Crim. App. 2002); 
Reese v. State
, 33 S.W.3d 238, 239 (Tex. Crim. App. 2000).  In the third case, the court held that an expert’s statement regarding the general behavior of rapists and rape victims was not too general to be helpful to the jury, and that the probative value of the complained of testimony outweighed its prejudicial effects.  
See Key v. State
, 765 S.W.2d 848, 851 (Tex. App.—Dallas 1989, pet. ref’d).  In none of the three cases did the appellant challenge the 
credibility
 of the witnesses proffering the challenged evidence.  
See Salazar
, 90 S.W.3d at 336-38; 
Reese
, 33 S.W.3d at 239; 
Key, 
765 S.W.2d at 851.